CLERK'S COPY

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO



MARGIE L. SOSA,

    Plaintiff,

vs.

                No. CIV 98-1074 MV/WWD

CITY OF ALBUQUERQUE, a
Municipal Corporation; and STEVE
ASTORGA,

    Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on Defendant Steve Astorga's Motion to Dismiss, filed December 29, 1998 **[Doc. 10]**. The Court, having considered the motion, response, reply, relevant law, and being otherwise fully informed, finds that the motion is well taken and will be **GRANTED**, although Plaintiff will also be granted leave to amend the complaint, as explained below.

### BACKGROUND

Plaintiff Margie L. Sosa ("Sosa") brings the current action against her former supervisor, Defendant Steve Astorga ("Astorga"), and her former employer, Defendant City of Albuquerque ("City"), raising claims of sexual harassment and constructive discharge. Count I of the Complaint pleads sexual discrimination pursuant to Title VII against both Defendants. Counts II through IV plead the common law torts of assault, intentional infliction of emotional distress, and *prima facie* tort against Defendant Astorga only.

For the purpose of resolving this motion, the Court assumes the truth of following facts as plead in the Complaint:

In the Spring, Summer and Fall of 1995, Sosa was employed by the City on a temporary basis, working in the Solid Waste Department, Weed and Litter Division. Astorga was her supervisor and also an employee of the City. Astorga told Sosa that if she had sexual intercourse and engaged in other sexual acts with him, she would succeed to permanent status in her employment and that her refusal would hurt the employment of her fiance who also worked under Astorga for the City. Sosa refused to engage in any sexual acts with Astorga and ultimately resigned from her position after a temporary disability, believing that the harassment would continue when she returned to work.

Paragraph 5 of the Complaint pleads as follows:

> At all times material, the actions of defendant Astorga were the actions of the Defendant City, because the Defendant Astorga was in a supervisory capacity employed by the City, and his actions as alleged were within the scope of his employment for the Defendant City; further, the Defendant City knew or should have known of the discriminatory practices by Defendant Astorga.

Based on these facts, Plaintiff asserts constructive discharge, sexual harassment and *qui pro quo* sex discrimination against both Astorga and the City. Plaintiff further pleads intentional torts against Astorga only.

Defendant Astorga moves to dismiss on the grounds that an individual supervisor cannot be found liable for sexual discrimination under Title VII and the New Mexico Tort Claims Act grants him immunity from suit for the alleged torts. Plaintiff Sosa resists dismissal or in the alternative requests leave to amend the Complaint.

2

## STANDARD OF REVIEW

A court may not dismiss a cause of action under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts supporting his or her claim that would entitle him or her to relief. *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 249-50 (1989). In considering a Rule 12(b)(6) motion, the court must assume as true all well-pleaded facts, and must draw all reasonable inferences in favor of the plaintiff. *Housing Auth. of the Kaw Tribe v. City of Ponca City*, 952 F.2d 1183, 1187 (10th Cir. 1991). The issue in reviewing the sufficiency of a complaint is not whether the plaintiff will ultimately prevail, but whether the plaintiff is entitled to offer evidence to support his or her claim. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). These deferential rules, however, do not allow the court to assume that a plaintiff "can prove facts that [he or she] has not alleged or that the defendants have violated the . . . laws in ways that have not been alleged." *Associated General Contractors of California, Inc. v. California State Council of Carpenters*, 459 U.S. 519, 526 (1983). "[G]ranting a motion to dismiss is 'a harsh remedy which must be cautiously studied, not only to effectuate the spirit of the liberal rules of pleading but also to protect the interests of justice.'" *Cayman Exploration Corp. v. United Gas Pipe Line Co.*, 873 F.2d 1357, 1359 (10th Cir. 1989) (quoting *Morgan v. City of Rawlins*, 792 F.2d 975, 978 (10th Cir. 1986)).

## ANALYSIS

This Motion raises two related questions: (1) Can Astorga be named as a defendant to a Title VII sex discrimination claim even though Astorga can not be found liable under this count? And (2) Can Astorga be sued for intentional torts committed during his employment with the City but

allegedly beyond "the scope of his duties"? The Court will address these contentions in turn, concluding that Astorga may be named in Count I alleging sexual discrimination "in his official capacity" or "in his capacity as supervisor," and that Astorga may also be sued in his individual capacity for intentional torts beyond the scope of his duties. However, the Court concludes that the Complaint as currently drafted fails to sufficiently distinguish the respective liability of Astorga and the City for his actions.

### 1. Astorga as a Defendant to Title VII Claim

Both parties agree that pursuant to Tenth Circuit precedent, Astorga may not be found liable as an individual for sex discrimination committed by him in violation of Title VII. *Haynes v. Williams*, 88 F.3d 898, 901 (10th Cir. 1996); *Sauers v. Salt Lake County*, 1 F.3d 1122, 1125 (10th Cir.1993). Astorga argues that he should therefore be dismissed from this count altogether. Plaintiff requests leave to amend the Complaint, striking Astorga from the prayer for relief in Count I, but otherwise leaving the Count unchanged.

In *Sauers, supra*, 1 F.3d 1122, the Tenth Circuit held that:

> [u]nder Title VII, suits against individuals must proceed in their official capacity; individual capacity suits are inappropriate. The relief granted under Title VII is against the employer, not individual employees whose actions would constitute a violation of the Act. We think the proper method for a plaintiff to recover under Title VII is by suing the employer, either by naming the supervisory employees as agents of the employer or by naming the employer directly.

*Id.* at 1125. *Haynes, supra*, 88 F.3d 898, reaffirmed this holding in light of the 1991 Amendments to the Civil Rights Act, stating that "personal capacity suits against individual supervisors are inappropriate under Title VII." *Id.* at 901. Thus, there is no doubt that Astorga cannot be sued

pursuant to Title VII in his individual capacity. In situations such as this, other district courts routinely dismiss the individual defendant from the complaint. Cf. *Worman v. Farmers Cooperative Assoc.*, 4 F.Supp.2d 1052, 1054 (D. Wy. 1998); *Roe v. Antle*, 964 F.Supp. 1522, 1533 (D.N.M. 1997); *Butler v. City of Prarie Village*, 961 F.Supp. 1470, 1475 (D. Kan. 1997).

However, there is apparently no reason why Astorga could not be named in the count alleging sexual discrimination either "in his official capacity" or "in his capacity as supervisor." Indeed, this is the approached suggested in *Sauers, supra*, 1 F.3d at 1125 ("We think the proper method for a plaintiff to recover under Title VII is by suing the employer, either by naming the supervisory employees as agents of the employer or by naming the employer directly."). This is the approach generally taken in § 1983 cases in which the plaintiff seeks damages against a state actor in his official rather than his individual capacity. Although Plaintiff could not receive any kind of judgment against Astorga, and the inclusion of his name in the sex discrimination count appears unnecessary, the Court is unaware of any bar to his being named in his official capacity or his supervisory capacity in this count. Cf. *Wilson v. Tulsa Junior College*, 1998 WL 909904 (10th cir. 1998) (naming defendant "in his capacity as supervisor").

The Complaint as it stands fails to clarify whether Astorga is being sued in his official or his individual capacity and seeks damages against him for violations of Title VII. Accordingly, Astorga must be dismissed from the sex discrimination claim contained in Count I as it is currently drafted. However, the Court will grant Plaitniff leave to amend, clarifying that Astroga is named in the sex discrimination count only in his "official" or "supervisory" capacity.

## 2. Astorga as a Defendant to Intentional Tort Claims

In addition to her sex discrimination claim, Sosa asserts claims of assault, intentional infliction of emotional distress and *prima facie* tort against Defendant Astorga alone. Astorga argues that because the Complaint pleads he was acting within the scope of his employment at the time of the events in question, he is granted immunity from suit by the New Mexico Tort Claims Act as a City employee. Plaintiff responds that although Astogra was acting within the "scope of his employment" at the time, he was not acting within the "scope of his duties" and therefore is not immune from suit as an individual for intentional torts committed by him.

The New Mexico Tort Claims Act grants immunity to all governmental employees sued for torts committed "while acting within the scope of their duties." NMSA 1978, § 41-4-4(A) (1996); *see Rivera v. New Mexico Highway and Transportation Dept.*, 115 N.M. 562, 563 (Ct. App. 1993), cert. denied, 115 N.M. 545 (1993); *Narney v. Daniels*, 115 N.M. 41, 48 (Ct.App.1992), cert. denied, 114 N.M. 720 (1993). The Act then waives immunity for certain specified torts, indemnifying governmental employees for liability if they were acting "within the scope of their duties" at the time. NMSA 1978, §§ 41-4-4 to -12. "Scope of duties" is defined as "performing any duties which a public employee is requested, required or authorized to perform by the governmental entity, regardless of the time and place of performance." NMSA 1978, § 41-4-3(F); *Rivera*, 115 N.M. at 563.

The purpose of the New Mexico Tort Claims Act is both "to ameliorate the harshness of the rule of immunity for certain acts of governmental entities when the same acts by private parties would yield liability," and to indemnify governmental employees for liability arising out of acts done in the scope of their duties. *Rivera*, 115 N.M. at 564; *Medina v. Fuller*, 1998 WL 9129928 *3 (N.M.

Ct. App. 1998); NMSA 1978, §§ 41-4-2(A), 41-4-4(A), 41-4-4(D). "Liability under the Act is based upon traditional tort concepts of duty and standard of care." *Rivera*, 115 N.M. at 564; NMSA 1978, § 41-4-2(B). "Thus, we infer that governmental entities would not be liable for acts of employees when the entities' private counterparts would not be liable because the private employees were not acting in the course and scope of employment." *Rivera*, 115 N.M. at 564.

The question has recently emerged in New Mexico case law as to whether "scope of duties" is coterminus with "scope of employment." In two recent cases, *Rivera* and *Narney*, the New Mexico Court of Appeals noted that "'scope of duties' as used in the Tort Claims Act may or may not be identical to the 'course and scope of employment' test used to determine common-law respondeat superior claims." *Rivera*, 115 N.M. at 563; *Narney*, 115 N.M. at 48. In both cases however, the Court of Appeals concluded it was unnecessary to decide the issue as the analysis was the same under either the "course of employment" or the "scope of duties" definitions. *Rivera*, 115 N.M. at 563; *Narney*, 115 N.M. at 48.

On the other hand, in the most recent case, *Medina v. Fuller*, 1998 WL 9129928 (N.M. Ct. App. 1998), which neither of the parties discuss, the Court of Appeals held that there is a difference between the meaning of "course or scope of employment" and "scope of duties" as defined in the Tort Claims Act. *Id.* at *3. "We consider it noteworthy that our legislature chose the phrase 'scope of duties' and then further defined that phrase in a particular way." *Id.* (citing *Milton v. Mitchell*, 762 P.2d 372, 377 (Wyo. 1988) (explaining that 'scope of duties' is different from 'scope of employment' and construing former phrase in light of confined purpose of Wyoming Tort Claims Act)). However, the Court of Appeals also noted that the result in the case before it was the same under either standard. *Id.* (law enforcement officer within scope of duties and course of employment while

7

driving patrol vehicle home at direction of agency and on "on-call" status at time of accident); *see also Haines v. Fisher*, 82 F.3d 1503, 1509 (10th Cir. 1996) (police officers who played practical joke on a citizen, stagging a robbery, were not acting within the scope of their duties as defined by Wyoming Tort Claims Act).

An act is considered "to be within the scope of employment if it is incidental to the employer's business assigned to the employee and it was done while the employee was working 'with the view of furthering the employer's interest and did not arise entirely from some external, independent and personal motive on the part of the employee.'" *Rivera*, 115 N.M. at 564 (quoting NM Jury Instruction SCRA 1986, 13-407); *Medina*, 1998 WL 9129928*5 ("it is necessary to determine the main purpose of injury-producing activity: If it was the pursuit of the employee's personal ends, the employer is not liable."); *Narney*, 115 N.M. at 49; Restatement (Second) Agency § 235 (1958) (servant is not acting within scope of employment if servant is motivated solely by personal concerns). Thus, the *Rivera* court concluded that horseplay at work– throwing water on another coworker– "would not be within the scope of employment because it was not done with a view of furthering the employer's interest and did arise from purely personal motives." *Rivera*, 115 N.M. at 564; *see also Salazar v. Town of Bernalillo*, 62 N.M. 199, 188 (1956) (mayor not acting within the scope of authority when he ordered use of excessive force to quell disturbance, and therefore town not liable for his torts); *Narney*, 115 N.M. at 49-50 (law enforcement officer outside of his jurisdiction not "acting in the course and scope of his employment when he terrorized plaintiffs").

In the present case, Plaintiff argues that Defendant Astorga's conduct falls within the scope and course of his employment but beyond the scope of his duties. Although Plaintiff's moving

8

papers are short on explanation, the Court believes Plaintiff is attempting this tortured distinction in order to pursue both liability against the City as Astorga's employer under Title VII and liability against Astorga personally for the intentional torts committed by him.

However, as two recent Supreme Court decisions make clear, a supervisory employee's harassing conduct does not need to be within "the course or scope of his employment" in order for the employer to be liable for such conduct under Title VII. *Burlington Industries, Inc. v. Ellerth*, __ U.S. __, 118 S.Ct. 2257, 2268 141 L.Ed.2d 633 (1998); *Faragher v. City of Boca Raton*, __ U.S. __, 118 S.Ct. 2275, 2290-91, 141 L.Ed.2d 662 (1998); *see also Harrison v. Eddy Potash, Inc.*, 158 F.3d 1371, 1374-75 (10th Cir. 1998). Indeed, after an exhaustive review of the law of agency and federal and state court decisions from across the country, the Supreme Court stated that "[t]he general rule is that sexual harassment by a supervisor is not conduct within the scope of employment." *Burlington*, 118 S.Ct. at 2267; *Faragher*, 118 S.Ct. at 2286 ("Courts of Appeals have typically held, or assumed, that conduct similar to the subject of this complaint falls outside the scope of employment;" collecting cases); *see also Wright-Simmons v. City of Oklahoma City*, 155 F.3d 1264, 1270 (10th Cir. 1998) ("Our cases previously found . . . the scope-of-employment provision . . . largely inapplicable to harassment cases, except in the fanciful case that the employer had made such illegal harassment part of the employee's job description."); *Hirschfeld v. New Mexico Corrections Dept.*, 916 F.2d 572, 576 (10th Cir. 1990) ("sexual harassment simply is not within the job description of any supervisor or any other worker in any reputable business."). Unless "the employee's 'purpose, however misguided, is wholly or in part to further the master's business," harassing conduct does not fall within the scope of employment and the employer is not liable on this basis." *Burlington*, 118 S.Ct. at 2266; *Harrison*, 158 F.3d at pp. 1375; *Wright-Simmons*, 155

F.3d at 1270. Rather, harassing conduct "motivated solely by individual desires" which "serves no purpose of the employer," falls within "the classic 'frolic and detour' for which an employer has no vicarious liability." *Faragher*, 118 S.Ct. at 2287; *see also* Note, "Scope of Employment" Redefined: Holding Employers Vicariously Liable for Sexual Assaults Committed by their Employees, 76 Minn. L.Rev. 1513, 1521-1522, and nn. 33, 34 (1992)(collecting cases).

The employer may nevertheless be liable for a supervisor's sexual harassment of a subordinate if: (1) the employer knew or should have known of the harassing conduct and failed to take remedial action; (2) the supervisor's high rank makes him the alter ego of the company; or (3) the supervisor "was aided in accomplishing the tort by the existence of the agency relation." *Burlington*, 118 S.Ct. at 2267; *Faragher*, 118 S.Ct. at 2290; *Harrison*, 158 F.3d at pp. 1374-75; *Wright-Simmons*, 155 F.3d at 1270-71. Thus, even if a supervisor was acting for his own purposes in harassing an employee, the employer may still be liable for such conduct if the employer negligently failed to stop the harassment or the supervisor was aided in accomplishing the harassment by his position of authority. *Burlington*, 118 S.Ct. at 2267; *Faragher*, 118 S.Ct. at 2290; *Harrison*, 158 F.3d at pp. 1374-75; *Wright-Simmons*, 155 F.3d at 1270-71.

In reaching these holdings, the Supreme Court observed that the phrase "course or scope of employment" is "'devoid of meaning in itself' and is 'obviously no more than a bare formula to cover the unordered and unauthorized acts of the servant for which it is found to be expedient to charge the master with liability, as well as to exclude other acts for which it is not.'" *Faragher*, 118 S.Ct. at 2287-88 (quoting W. Keeton, D. Dobbs, R. Keeton, & D. Owen, Prosser and Keaton on the Law of Torts 502 (5th ed.1984)). The "'ultimate question' in determining the scope of employment is 'whether or not it is just that the loss resulting from the servant's acts should be considered as one

of the normal risks to be borne by the business in which the servant is employed.' *Id.* at 2288 (quoting Restatement Law of Agency § 229, Comment a); *see also Rivera*, 115 N.M. at 564.

In light of the fact that "scope of employment" has no fixed meaning but is merely used expeditiously to determine the fair distribution of liability between and employer and an employee for torts committed by the employee, drawing a sharp distinction between "scope of employment and "scope of duties" appears to be a project without a purpose. Cf. *Weinstein v. City of Santa Fe*, 121 N.M. 646, 650 (1996) (acting within the scope of his duties "simply means that an officer must be acting within the scope of employment in order to be sued in his or her capacity as a law enforcement officer"). Moreover, given the explicit pronouncements of the Supreme Court and Tenth Circuit that sexual harassment does not normally fall within the "scope of employment," there appears to be no reason or basis for concluding in the present case that Astorga was acting within the scope of his employment but outside the scope of his duties. The specific facts pled by the Plaintiff support the conclusion that Astorga was acting neither in the course of his employment nor within the scope of his duties but was pursuing his own personal agenda in harassing Sosa. Thus, based on the actions alleged in the Complaint to have been committed by Astorga, he would not be granted immunity by the New Mexico Tort Claims Act but could be sued in his personal and individual capacity for the intentional torts he allegedly committed. *Rivera*, 115 N.M. at 564.

However, the Complaint as currently drafted pleads as follows:

> At all times material, *the actions of Defendant Astorga were the actions of the Defendant City*, because the Defendant Astorga was in a supervisory capacity employed by the City, and *his actions as alleged were within the scope of his employment* for the Defendant City; . . . .

¶ 5 (emphasis added). This allegation, included in Count I, is incorporated by reference in each of the counts pleading intentional torts by Astorga personally. The quoted language equates the actions of Defendant Astorga with the actions of the City going beyond even the assertion that he was acting within the scope of his employment as narrowly defined by Plaintiff in her moving papers. If the Court assumes the truth of this allegation, then Astorga cannot be held liable as an individual for the torts alleged. Rather, his actions must be imputed to the City. If Astorga was acting on behalf of the City and not on his own personal behalf, then he is immune from suit as an individual pursuant to the New Mexico Tort Claims Act. *See Medina*, 1998 WL 9129928*5.

Thus, as the Complaint currently stands, it fails to plead with sufficient clarity that Defendant Astorga was not acting in the course and scope of either his employment or duties but rather pursuing his own personal motivations in harassing Sosa. Accordingly, Counts II through IV, pleading intentional torts against Astorga personally, must be dismissed. However, the Court grants Plaintiff leave to amend the Complaint, specifying the nature of Atorga's actions and the distinct theories for holding both the City and Astorga personally liable for his conduct.

## CONCLUSION

**IT IS THEREFORE ORDERED** that Defendant Steve Astorga's Motion to Dismiss [**Doc. 10**] is hereby **GRANTED**. Defendant Astorga is hereby **DISMISSED FROM COUNT I**. Further, **COUNTS II, III AND IV** are hereby **DISMISSED**. Plaintiff's request to amend the Complaint is

also hereby **GRANTED**. Plaintiff has twenty (20) days from the date of entry of this order to file an amended Complaint.

/s/ Martha Vázquez
MARTHA VÁZQUEZ
DISTRICT COURT JUDGE

Attorney for Plaintiff:
    Jack Love

Attorney for Defendants:
    Tila Fleming Hoffman